UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JUDITH A. VISCONTI,

       Plaintiff,

vs.                                                          Case No. 3:08-cv-430-J-MCR

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
_____

**MEMORANDUM OPINION AND ORDER[1]**

This case is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits on January 10, 2002, alleging an inability to work since February 16, 1999. (Tr. 62). The Social Security Administration denied this application initially and upon reconsideration. (Tr. 31-34, 43-45). Plaintiff then requested and received an initial and secondary hearing before an Administrative Law Judge ("ALJ") on December 9, 2003 and July 13, 2004, respectively. (Tr. 251-334, 335-81). On March 18, 2005, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 15-27). On April 11, 2005, Plaintiff

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 10).

1

filed a Request for Review by the Appeals Council (Tr. 7), and on May 20, 2005, the Appeals Council denied that request. (Tr. 4-6). Plaintiff timely filed a Complaint in the U.S. District Court on July 6, 2005. (Case Number #3:05-cv-623-J-HTS). Subsequently, the District Court remanded the action back to the ALJ on February 10, 2006. (Tr. 407-416). In accordance with the remand instructions, the ALJ held supplemental hearings on June 6, 2006 and May 23, 2007. (Tr. 576-626, 627-77). On November 15, 2007, the ALJ issued a second decision finding Plaintiff not disabled. (Tr. 390-400). On April 14, 2008, the Appeals Council denied Plaintiff's request for review. (Tr. 382-84). Accordingly, the ALJ's November 15, 2007 decision was the final decision of the Commissioner. Plaintiff timely filed a Complaint in the U.S. District Court on April 29, 2008. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since February 16, 1999, due to shoulder, hand, and neck pain. (Tr. 81).

### B.     Summary of Evidence Before the ALJ

On the date the ALJ's final decision was issued, Plaintiff was fifty eight years old. She has a high school education (Tr. 19) and past relevant work experience as a central-office operator. (Tr. 399). Plaintiff's relevant medical history is discussed at length in the ALJ's decision and will be summarized here. Although the instant record is voluminous, this Court will only summarize the medical history prior to Plaintiff's date last insured, September 30, 2005.

Plaintiff treated with Dr. Vickie Prince, M.D. ("Dr. Prince") for a number of years for neck pain. (Tr. 127-173). In fact, Dr. Prince commented in December 1998 Plaintiff exhibited chronic neck pain and was very tender around her cervical spine. (Tr. 187). On August 30, 1999, Dr. Prince opined Plaintiff had significant cervical disc disease, needed to take frequent breaks at work, could only work four to six hours per day, and needed to change positions frequently. (Tr. 153). In April 2000, Dr. Prince reported Plaintiff was unable to work (Tr. 145) and ultimately diagnosed Plaintiff with cervical radiculopathy on January 26, 2001. (Tr. 138).

On March 26, 2002, Dr. Prince noted Plaintiff had frequent spasms with slightly decreased flexion and significant loss of extension with normal grip strength and slightly decreased fine dexterity. (Tr. 128). Shortly thereafter, on July 24, 2002, Dr. Prince indicated Plaintiff had cervical spine limitations and had developed spasms in the right side of her neck which radiated into the shoulders. (Tr. 137). Dr. Prince opined this resulted in a mildly decreased subjective grip strength and an objectively normal grip in Plaintiff's right hand. Id. On November 20, 2003, Dr. Prince completed a Medical Assessment of Ability to do Work Related Activities (Physical) form in which she opined Plaintiff was restricted to: lifting/carrying up to 10 pounds occasionally; sitting for three hours in an eight hour day; standing for one hour in an eight hour day; walking for one hour in an eight hour day; frequent simple grasping; occasional fine manipulation; never climbing, balancing, crouching, kneeling, and crawling; and occasional stooping. (Tr. 264-67). On February 26, 2004, Plaintiff was evaluated by Dr. Dennis Dewey, M.D. ("Dr. Dewey") for a consultative neurological examination the assessment of which was (1) chronic neck pain, secondary strain, and degenerative disc disease and (2) bilateral

3

hand parasthesias possibly cervical in origin. (Tr. 269). On that same date, Dr. Dewey completed a Medical Source Statement of Ability to do Work Related Activities (Physical) form in which he opined Plaintiff was restricted to: lifting/carrying 10 pounds or less frequently and occasionally; sitting unimpaired or sitting with a need to alternate sitting and standing to relieve pain or discomfort; standing and walking without limitation; limited pushing/pulling with the upper extremities due to decreased endurance and sensation or mild weakness; frequent or occasional climbing, crouching, crawling, and stooping; and frequent balancing. (Tr. 270-73). At that time, Dr. Dewey also suggested repeating the MRI and NCV studies done in 1997 to determine Plaintiff's condition and long-term prognosis. (Tr. 269).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

4

disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant matter, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through September 30, 2005. (Tr. 392). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date. Id. At step two, the ALJ held Plaintiff "had the following severe impairment: degenerative disc disease of the cervical spine . . . ." Id. At step three, the ALJ concluded Plaintiff did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 394).

The ALJ then determined Plaintiff retained the RFC to

> sit, stand[,] and walk for six hours in an eight hour day; lift/carry 10 pounds frequently and 20 pounds occasionally; bend, stoop, crouch, kneel[,] and climb frequently; reach, handle[,] and perform gross manipulation constantly with no limitations; finger[ ] objects within the above weight limitations . . . between frequently and constantly; [and] feel frequently.

Id. The ALJ also opined Plaintiff had "no visual, audiological, speech, environmental[,] or mental limitations." Id. The ALJ explained he did not give full credit to the opinions of Plaintiff's treating physician, Dr. Prince, because Dr. Prince's "assessments were out of context with the record as a whole and were not supported by her own medical

5

records." (Tr. 396). The ALJ also refused to credit the opinions of Plaintiff's consulting neurologist, Dr. Dewey, because "Dr. Dewey's assessment was inconsistent with his own clinical examination findings . . . ." Id. At step four, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to determine Plaintiff's "past relevant work as a Central Office Operator did not require performance of work-related activities precluded by the [Plaintiff's] credible residual functional capacity." (Tr. 399). Therefore, the ALJ determined Plaintiff was not disabled and did not proceed to step five. Id.

### III.    ANALYSIS

#### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff essentially raises four issues on appeal. First, Plaintiff asserts the ALJ erred in failing to discuss all relevant and objective medical evidence. (Doc. 15, p. 10). Second, Plaintiff argues the ALJ erred in determining Plaintiff could perform her past relevant work. Id. at 13. Third, Plaintiff asserts the ALJ failed to afford appropriate weight to the opinions of Plaintiff's treating physicians. Id. at 14. Fourth, Plaintiff claims the ALJ erred by failing to order an additional neurological examination to validate the diagnosis of Plaintiff's treating physician. Id. at 16.

#### 1. Consideration of All Record Evidence

First, Plaintiff argues the ALJ erred in failing to discuss all relevant medical evidence. (Doc. 15, p. 10). Specifically, Plaintiff alleges the ALJ ignored the effects of some of Plaintiff's diagnosed disorders—namely, headaches, diabetes, and osteoporosis. Id. at 10-13. It is Plaintiff's burden, however, to establish she has work-related functional limitations from a given disorder. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). It is understood "[t]he mere diagnosis [of a condition] says nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). "The [Plaintiff] bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence to support [her] claim."

7

Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Further, because Plaintiff is in the best position to "provide information about her own medical condition," it is reasonable "to require [Plaintiff] . . . to do so." Bowen, 482 U.S. 137, 146 n.5. Notably, the instant medical records are devoid of any objective evidence indicating Plaintiff had any functional limitations resulting from these medical conditions prior to Plaintiff's date last insured, September 30, 2005. Accordingly, because Plaintiff failed to provide objective medical evidence of functional limitations resulting from headaches, diabetes, or osteoporosis, this Court finds the ALJ did not err in his consideration of the record evidence.

Plaintiff also summarily argues the ALJ placed too much emphasis on the absence of an MRI examination and thus the cause of Plaintiff's cervical impairment was not accurately addressed. (Doc. 15, p. 11). At the hearing, Dr. Cloninger testified there were simple neurological tests that could have been performed to aid in diagnosing a cervical problem. (Tr. 654). Plaintiff claimed a number of these tests were completed by Dr. Prince, including drumming Plaintiff's fingers, tapping Plaintiff's fingers and elbow with a hammer, and testing Plaintiff's arm with a sharp, pointed roller. (Tr. 654-55). However, there was not significant objective evidence of testing regarding Plaintiff's cervical impairment outside of Plaintiff's testimony. Without objective testing in the record, there was little to address regarding Plaintiff's cervical problem. Thus, the ALJ did not err by failing to accurately address Plaintiff's cervical impairment.

### 2. **Performance of Prior Relevant Work**

Second, Plaintiff argues the ALJ erred by determining Plaintiff could perform her past relevant work. (Doc. 15, pp. 13-14). Specifically, Plaintiff argues that even if Dr.

Cloninger's opinion regarding Plaintiff's ability to perform manipulative activities (reaching, handling, fingering) was to be accepted, that opinion precluded Plaintiff's past relevant work. Id. Plaintiff asserts that because Dr. Cloninger agreed Plaintiff could reach, handle, and finger "at least frequently" (Tr. 669), Plaintiff's manipulative abilities should have been limited to frequently. (Doc. 15, pp. 13-14). The Dictionary of Occupational Titles describes Plaintiff's past relevant work as requiring constant reaching and handling and frequent fingering. (Doc 15, pp. 19-21). Thus, if Plaintiff was able to prove she was so limited, her past relevant work would have been precluded according to the Dictionary of Occupational Titles.

Notably, however, Plaintiff does not point to any accepted record medical evidence that would have prohibited Plaintiff from constantly reaching and handling. In fact, in Dr. Dewey's 2006 consultative examination report, he indicated Plaintiff was actually capable of reaching and handling constantly. Plaintiff's RFC "is an assessment, based upon all of the relevant evidence, of [her] remaining ability to do work despite [her] impairments." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). It is not simply assumed because Plaintiff could reach and handle "at least frequently," that she could not have reached or handled constantly. Because Plaintiff did not present any evidence accepted by the ALJ to indicate she was able to reach or handle less than constantly, the ALJ did not err in finding Plaintiff could return to her past relevant work.

### 3. Appropriate Weight Given To Medical Opinions

Third, Plaintiff asserts the ALJ erred in failing to afford proper weight to the medical opinions of Dr. Prince and Dr. Dewey. (Doc. 15, pp. 14-16). Specifically,

Plaintiff alleges the ALJ erred in finding good cause to discredit the medical opinions of both doctors. Id. Upon review of the record evidence, this Court determines the ALJ did not err in finding good cause to discount the opinions.

It is established in the Eleventh Circuit a treating physician's opinion on the nature and severity of a claimant's impairments must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Further, if the treating physician's opinion is not entitled to controlling weight, then it must be given substantial or considerable weight unless good cause is shown to the contrary. See Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583; 20 C.F.R. § 404.1527(d); SSR 96-6p. "'Good cause' exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing Lewis, 125 F.3d at 1440).

### A. Good Cause Exists to Discredit Dr. Prince

Plaintiff alleges, and the Commissioner does not dispute, Dr. Prince was Plaintiff's treating physician. (Doc. 15, p. 16). Accordingly, this Court determines Dr. Prince was Plaintiff's treating physician and as such, her opinion was entitled to controlling weight unless it was not well-supported by medically acceptable clinical and laboratory diagnostic techniques or was inconsistent with the other substantial evidence in the record. In the instant matter, the ALJ did not "attach[ ] controlling weight to any of Dr. Prince's opinions about the nature and severity of [Plaintiff's] specific functional

10

impairments because, as noted by Dr. Cloninger, Dr. Prince's diagnoses [were] not well-supported by medically acceptable clinical or laboratory diagnostic techniques." (Tr. 396).

Further, the ALJ determined good cause existed to deny substantial or considerable weight to Dr. Prince's opinions about Plaintiff's limitations because her reports were "not accompanied by objective medical evidence and [were] conclusory and inconsistent with her own medical records." (Tr. 396). As support therefor, the ALJ relied on Dr. Cloninger testimony that he had reviewed the entire medical exhibit and noticed the sparse nature of Dr. Prince's examinations. (Tr. 652-59). Dr. Cloninger also testified there was not, in his opinion, clinical evidence to support the specific functional restrictions Dr. Prince offered and, as a whole, the record did not corroborate the assessed limitations. (Tr. 657). Most notably, Dr, Cloninger noted the record contained no documentation establishing Dr. Prince performed any neurological testing or any manipulative testing. Id. As such, Dr. Cloninger concluded "Dr. Prince's assessments were out of context with the record as a whole and were not supported by her own medical records." (Tr, 396; see also 639-44, 652-59). Accordingly, because Dr. Prince's opinions were conclusory and not bolstered by the record evidence, this Court finds the ALJ did not err in finding good cause to discount them.

## B. Good Cause Exists to Discredit Dr. Dewey

As a threshold matter, for purposes of assigning weight to a medical opinion, it must be determined whether a source is treating or nontreating. Section 404.1502 defines a nontreating source as "a physician . . . who has examined [a claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."

11

20 C.F.R. § 404.1502. A review of the medical records reveals Dr. Dewey examined Plaintiff on only two occasions—February 26, 2004 and October 2, 2006. (Tr. 268-73, 564-69). Due to the lack of an ongoing treatment relationship, Dr. Dewey may be considered a nontreating source. As a nontreating source, Dr. Dewey's opinion is entitled to less weight than that of a treating physician. See 20 C.F.R. § 404.1527(d)(1).

In addition to finding good cause to discredit Dr. Prince's opinions, the ALJ found good cause to discredit the opinion of Dr. Dewey. (Tr. 396). Plaintiff claims Dr. Dewey's opinion shows the existence of neck, hand, and muscle difficulty. (Doc. 15, p. 15). Dr. Dewey opined Plaintiff

> was restricted to: lifting/carrying 10 pounds or less frequently and 10 pounds or less occasionally; sitting unimpaired or sitting with a need to alternate sitting and standing to relieve pain or discomfort; standing and walking without limitation; limited pushing/pulling with the upper extremities due to decreased endurance and sensation or mild weakness; frequent or occasional climbing, crouching, crawling[,] and stooping; [and] frequent balancing.

(Tr. 396).

In finding good cause to discredit Dr. Dewey's opinion, the ALJ relied on the testimony of Dr. Cloninger, who testified Dr. Dewey's opinions were surprising, given the narrative portions of Dr. Dewey's reports. (Tr. 661). Specifically, Dr. Cloninger testified Dr. Dewey's assessment was inconsistent with Dr. Dewey's own clinical examination findings and Dr. Dewey's assessed manipulative limitations were internally inconsistent. Id. Specifically, Dr. Dewey's assessment was inconsistent with the findings of his clinical examinations as he reported Plaintiff had a limited ability to feel, but then opined Plaintiff was able to feel "constantly." (Tr. 272, 396). Accordingly, the ALJ's decision to discount Dr. Dewey's opinion was supported by substantial evidence

12

and was not error.

### 4. ALJ's Duty to Develop the Record

Finally, Plaintiff argues the ALJ erred by recognizing the lack of neurological testing but failing to order an additional independent neurological evaluation. (Doc. 15, p. 16). Specifically, Plaintiff argues if the ALJ was so concerned with the "lack of appropriate neurological examination and testing even with Dr. Dewey's evaluation, the [ALJ] could have ordered another independent neurological evaluation." (Doc. 15, p. 16). The Commissioner does not address this argument.

It is well settled the ALJ has a duty to develop a full and fair record. Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam); Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997); Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). This is true even when the claimant is represented by counsel. Cowart, 662 F.2d at 735. However, "'[i]n fulfilling his duty to conduct a full and fair inquiry, the [ALJ] is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the [ALJ] to render a decision.'" Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988) (internal citation omitted). Additionally, in DIB claims, the ALJ is not to order a consultative examination "when [a claimant's] insured status expired in the past and there is no possibility of establishing an onset date prior to the date [the claimant's] insured status expired." 20 C.F.R. § 404.1519b(c).

In the instant matter, both Dr. Dewey and Dr. Cloninger opined an MRI and NCV studies would be helpful to determine the cause of Plaintiff's problems. (Tr. 637). However, while such studies might have been helpful during Plaintiff's relevant period

between February 16, 1999 and September 30, 2005, there is no indication such testing would have been beneficial well after Plaintiff's date last insured, let alone "necessary" to assist the ALJ.  See Knipple v. Comm'r of Soc. Sec., No. 6:08-cv-40-Orl-18DAB, 2009 WL 51317 at *4 (M.D. Fla. Jan. 07, 2009) (holding a consultative examination that would have to occur significantly after the date last insured was not "necessary"). Additionally, Dr. Cloninger noted according to Dr. Dewey's examinations, Plaintiff could do a lot more during the relevant period in 2004 than at the time of the May 23, 2007 hearing.  (Tr. 669).  Thus, because a post-date-last-insured consultative examination was not "necessary" to assist the ALJ, he was not required to order a consultative examination several years after Plaintiff's date last insured.

**IV.    CONCLUSION**

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  29th   day of July, 2009.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record